[Crim. No. 2988. In Bank.—September 23, 1927.]

## THE PEOPLE, etc., Respondent, v. CARL R. GAYLE, Appellant.

[1] CRIMINAL LAW—FORGERY—UNENFORCEABLE CONTRACTS.—The contention that contracts purporting to be for the sale of land in an unrecorded tract, not being enforceable at law, there could be no crime of forgery with reference to their execution, cannot be maintained, as the true test is whether or not it is possible to defraud by reason of the forgery or utterance of the instrument.

[2] ID.—PLEADING—INFORMATION—SEPARATE OFFENSES.—In a prosecution for forgery, where it is claimed that the defendant forged three separate contracts for the sale of land and a check for payment of the first installment under each contract, an information in six counts charging separately the making, forging, altering, counterfeiting, uttering, publishing, and passing of the three different checks and the corresponding contracts is correct, as the false making and forging of two separate instruments, done at the same time, are separate and distinct offenses, although the passing or utterance of several forged instruments at the same time constitutes but one offense.

[3] ID.—GENERAL VERDICT—SUFFICIENCY OF.—In such a case, a general verdict returned against the defendant meets the situation, and it must be assumed on appeal, in support thereof, that the jury

---

1. Injurious nature of forged instrument as element of forgery, notes, 3 Ann. Cas. 293; 9 Ann. Cas. 1111. Worthless instrument as subject of forgery, note, 24 L. R. A. 33. See, also, 12 Cal. Jur. 653; 12 R. C. L. 148, 150.

2. Joinder of counts for forgery and uttering forged instrument, note, 21 Ann. Cas. 237. See, also, 12 Cal. Jur. 660; 12 R. C. L. 159. Forgery of different instruments at one time as one or more crimes, note, 61 L. R. A. 819.

3. See 12 Cal. Jur. 667; 27 R. C. L. 856.

found the defendant guilty of falsely making and counterfeiting all of the instruments, where no question was raised at the time of the return of the verdict as to its form or sufficiency in not indicating which of the acts charged as forgery had been committed by defendant with reference to each of the instruments.

[4] ID.—EVIDENCE—HANDWRITING.—The jury was justified in finding that the defendant in such a case had falsely made and counterfeited all of the instruments, although the handwriting experts produced by the prosecution did not state positively that the handwriting upon all the documents was that of defendant, as the jury had a right to come to a conclusion independent of the expert opinion evidence, where it had an opportunity to examine the documents alleged to have been forged and the exemplars of the handwriting of defendant which were also in evidence, and to make its own deductions therefrom.

[5] ID.—SIGNING OF CHECKS—ACCESSORIES.—In such a case, where the prosecution did not claim that defendant actually wrote the forged signatures but that somebody, at the instigation of defendant and with his knowledge and consent and acting upon his advice, wrote the checks, and that thereafter defendant took them to the company and received his commissions, and that it was all done as a part of defendant's definite scheme and plan, it must be presumed on appeal that, in accordance with this theory, the jury reached its verdict, the trial court having instructed the jury that if it believed from the evidence that the defendant caused or procured to be signed the name of another person, as alleged in the information, or aided, abetted, encouraged, or assisted another to sign the name of said person thereto, knowing he had no authority so to do, they should find the defendant guilty.

[6] ID.—LIABILITY OF ACCESSORIES.—All persons concerned in the commission of a felony, whether they directly commit the act constituting the offense or aid or abet in its commission, though not present, are punishable as principals.

[7] ID.—SIGNATURES—NAMES OF EXISTING OR FICTITIOUS PERSONS—IMMATERIALITY OF.—In a prosecution for forgery, whether the signatures in question were forgeries of names of existing persons or names of fictitious persons is immaterial under our present law.

[8] ID.—MISCONDUCT—ARGUMENT.—Where witnesses called by the defendant testified that his reputation for truth, honesty, and in-

---

4.˙ Weight of expert and opinion evidence, note, 4 **Ann. Cas.** 986. See, also, 8 **Cal. Jur.** 165; 11 **R. C. L.** 586.

   5. See 12 **R. C. L.** 151.

   6. Forgery by use of fictitious name, note, 18 **Ann. Cas.** 482. See, also, 12 **Cal. Jur.** 654; 12 **R. C. L.** 151.

   7. See 8 **Cal. Jur.** 623.

tegrity was good and upon cross-examination some of them stated that they heard that defendant had been arrested for petit larceny and had served a sentence in jail as a result thereof, it was not prejudicial error for the district attorney to state to the jury in his argument that defendant's reputation was good, although he had served a sentence of thirty days in jail, where, on objection, he modified his remark by stating that he was merely making the remark in connection with defendant's reputation, and the trial court then and there instructed the jury that the remark was not evidence of the fact itself.

(1) 26 C. J., p. 906, n. 40, p. 910, n. 95.    (2) 16 C. J., p. 58, n. 86; 26 C. J., p. 956, n. 36, 41.    (3) 16 C. J., p. 1105, n. 11; 17 C. J., p. 227, n. 92.    (4) 16 C. J., p. 757, n. 37.    (5) 16 C. J., p. 121, n. 6; 17 C. J., p. 226, n. 74; 36 C. J., p. 927, n. 90.    (6) 26 C. J., p. 899, n. 47.    (7) 16 C. J., p. 907, n. 22; 40 Cyc., p. 2497, n. 53.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Arthur Keetch, Judge.    Affirmed.

The facts are stated in the opinion of the court.

Fawcett & Ring for Appellant.

U. S. Webb, Attorney-General, and Frank Richards, Deputy Attorney-General, for Respondent.

LANGDON, J.—Defendant was charged by information containing a number of separate counts, with the making, forging, altering, and counterfeiting of certain checks and contracts. The jury found him guilty of the crime of forgery and from a judgment entered upon that verdict and from an order denying his motion for a new trial he has appealed.

The outstanding facts appearing in the record are that the defendant was a real estate salesman in Los Angeles, California, and was attempting to sell property owned or controlled by persons doing business under the name of Clear Lake Beach Company. He handed to said company three purported contracts of sale of lots in its subdvision. These contracts were signed, respectively, by Warburton, McLendon, and Martin, as purchasers, and by the defendant, as agent of the Clear Lake Beach Company, and each was ac-

companied by a check of the supposed purchaser for the first payment upon the land. Upon turning these contracts and checks over to his company, the defendant collected commissions upon two of them, amounting to $155. Later, all the checks were returned by the banks upon which they were drawn, marked "No Account," and the purported purchasers could not be located at the addresses given or elsewhere.

[1] The first contention of the appellant is that as the contracts in question purported to be contracts for the sale of land in an unrecorded tract, and, therefore, were not enforceable at law, there could be no crime of forgery with reference to unenforceable obligations. This contention is disposed of by the case of *People* v. *Munroe,* 100 Cal. 664 [38 Am. St. Rep. 323, 24 L. R. A. 33, 35 Pac. 326], which considers the earlier cases relied upon by appellant and comes to the conclusion that "to declare the law to be that all contracts which are not enforceable, because against the policy of the law, are not the subject of forgery, would be offering a *carte blanche* to the professional forger of which he would not be slow to take advantage, and hereafter he would confine himself to the manufacture of spurious paper in the nature of contracts against public policy." The true test, as laid down in the case last cited, is whether or not it is possible to defraud by reason of the forgery or utterance. This rule has been followed in subsequent cases. (*People* v. *James,* 110 Cal. 155 [42 Pac. 479]; *People* v. *McGlade,* 139 Cal. 66 [72 Pac. 600].)

[2] It is also contended that there is a fatal variance between the pleading and proof. Defendant was tried upon six counts of the information. These counts charged, separately, the making, forging, altering, counterfeiting, uttering, publishing, and passing of the three different checks and their corresponding contracts. Appellant's contention is that there were only three separate transactions; that each check was connected with a contract and the two were one inseparable transaction, and that, at most, the defendant could only be charged with three offenses and not with six. The form of the pleading is supported by the authority of *People* v. *Frank,* 28 Cal. 507, 513, and under the authority of *People* v. *Ryan,* 74 Cal. App. 125 [239 Pac. 419], the false making and forging of two separate instru-

ments, although done at the same time, are separate and distinct offenses, although the passing or utterance of several forged instruments at the same time constitutes but one offense. Here the defendant was charged with the forgery of six separate and distinct instruments. [3] A general verdict was returned which meets the situation here and we must assume, in support of the same, that the jury found the defendant guilty of falsely making and counterfeiting all of the instruments. No question was raised at the time of the return of the verdict as to its form or sufficiency in not indicating which of the acts charged as forgery had been committed by defendant with reference to each of the instruments. Had such an objection been made, the court, probably, would have returned the verdict to the jury and directed a reconsideration of it, as provided by section 1161 of the Penal Code. [4] The jury was justified in finding that the defendant had falsely made and counterfeited all the instruments, for while the handwriting expert produced by the prosecution did not state, positively, that the handwriting upon all the documents was that of defendant, nevertheless the jury had a right to come to a conclusion independent of this expert opinion evidence, as it had an opportunity to examine the documents alleged to have been forged and the exemplars of the handwriting of defendant which were also in evidence and to make its own deductions therefrom.

The basis of appellant's objection to the admission of the forged contracts and checks in evidence, i. e., that the contracts were void and not the subject of forgery, has been discussed hereinbefore.

[5] It is also vigorously contended that the prosecution made no claim that defendant had actually written the signatures upon any of the instruments, and, therefore, the verdict and judgment are improper. This contention is made because of certain language used by the district attorney in presenting his case to the jury. In reviewing the evidence, the district attorney correctly stated that Mr. Carlson, the handwriting expert called by the prosecution, had been unwilling to state positively that the handwriting upon the three checks was the handwriting shown by the exemplars of the defendant's handwriting, but that he had been of the positive opinion that the three checks were

signed by the same person. The district attorney called attention to the fact that if the three checks were signed by the same hand, then it was apparent that defendant had not made *bona fide* sales of the three lots, and that the prosecution did not adopt the theory that defendant actually wrote the forged signatures, but that it was claimed by the prosecution that somebody, at the instigation of Gayle and with his knowledge and consent and acting upon his advice, wrote the checks, and that, thereafter, defendant took them to the company and received his commissions, and that it was all done as a part of defendant's definite scheme and plan. In accordance with this theory of the case, we must presume the jury reached its verdict, for the trial court gave an instruction to the effect that if the jury believed from the evidence that the defendant caused or procured to be signed the name of another person as alleged in the information, or aided, abetted, encouraged, or assisted another to sign the name of said person thereto, knowing he had no authority so to do, they should find the defendant guilty.

[6]   This instruction stated the law, for all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are punishable as principals. (Sec. 971, Pen. Code.)   [7]   Whether the signatures in question were forgeries of names of existing persons or whether they were names of fictitious persons is immaterial under our present law.   (*People* v. *Whittaker,* 68 Cal. App. 7 [228 Pac. 376]; *People* v. *Jones,* 12 Cal. App. 129 [106 Pac. 724]; *People* v. *Lucas,* 67. Cal. App. 452 [227 Pac. 709].)

[8]   The only other matter that requires discussion upon this appeal is the assignment as prejudicial error of a remark made by the district attorney in his closing address to the jury. Defendant had called witnesses who testified that his reputation for truth, honesty, and integrity was good. Upon cross-examination, they were asked if they had heard that defendant had been arrested for petit larceny and had served a sentence in jail as a result thereof. Some of them answered in the affirmative. In commenting upon the testimony of these witnesses, the district attorney remarked to the jury that defendant's reputation was good, although he had served a sentence of thirty days in jail.

Objection was immediately made and the district attorney modified his remark by stating that he was merely making the remark in connection with defendant's reputation. The trial court then and there instructed the jury that the remark was not evidence of the fact itself. As restricted by the district attorney and by the trial court, the statement was unobjectionable. It was proper to ask the witnesses who had testified to the good reputation of defendant whether or not they entertained their opinions after having heard that defendant had been confined in jail for petit larceny and when it appeared from their replies that they had heard of the incident mentioned and, nevertheless, thought defendant's reputation was good, it was proper for the district attorney to remark upon the incongruity of the testimony.

No further discussion of the points raised upon appeal is necessary. No substantial or prejudicial error appears in the record and the guilt of the defendant appears therefrom beyond a reasonable doubt.

The judgment and order appealed from are affirmed.

Preston, J., Richards, J., Shenk, J., Waste, C. J., Curtis, J., and Seawell, J., concurred.